UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | |
|---|---|
| ANITA HORNACKY<br>2551 Hetzel Drive<br>Parma, Ohio 44134<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY<br>200 Hopmeadow Street<br>Simsbury, Connecticut 06089<br><br>　　　　Defendant. | ) CASE NO.:<br>)<br>)<br>) JUDGE:<br>)<br>)<br>)<br>)<br>)<br>) **PLAINTIFF'S COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Anita Hornacky, by and through counsel, for her Complaint against Defendant Hartford Life and Accident Insurance Company, states and alleges as follows:

## INTRODUCTION AND THE PARTIES

1.　　At all times relevant, Plaintiff Anita Hornacky was a citizen of the United States and resident of Cuyahoga County, Ohio. This is an action to enforce and redress violations of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., committed by the Defendant in regard to Anita Hornacky's long term disability plan (the "Plan"), which is an "employee welfare benefit plan," as that term is defined in 29 U.S.C. § 1002(1).

2. Prior to Anita Hornacky's postural orthostatic tachycardia syndrome ("POTS") diagnosis, she was employed as an operating room nurse with Cleveland Clinic Health Systems ("CCHS"). CCHS was the "sponsor" of the Plan, pursuant to 29 U.S.C. § 1002(16)(B). At all times relevant, Ms. Hornacky was a "participant" in the Plan, as that term is defined in 29 U.S.C. § 1002(7).

3. Defendant Hartford Life and Accident Insurance Company ("Hartford") is a Connecticut corporation, which holds its principal place of business in Hartford, Connecticut. The express terms of the Plan designated Hartford as having "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [Plan]."

4. Thus, Hartford is a fiduciary, as that term is defined in 29 U.S.C. § 1002(21), for benefits provided under the Plan.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction of this action under 29 U.S.C. § 1132(e) as these claims are made under ERISA, 29 U.S.C. § 1132(a)(1)(B).

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b). The events or omissions giving rise to these claims occurred in this district and division. Moreover, the plan sponsor's principal place of business, which was Anita Hornacky's place of employment was, at all times relevant, in Cuyahoga County.

## RELEVANT FACTS

7. The Plan offered CCHS employees long term disability coverage. Eligible employees were automatically enrolled by CCHS, and since June 18, 2008, Ms. Hornacky was enrolled in the long term disability coverage and insured under the Plan.

8. Under the terms of the Plan, in the event of a qualifying disability, Ms. Hornacky's long term disability coverage compensated her in the amount of 60% of her basic monthly earnings.

9. Ms. Hornacky was employed by CCHS as a Registered Nurse, a position which requires the ability to work in a stressful environment, stand and walk for extended periods of time, and also requires a full range of body motion, including handling and lifting patients.

10. In June 2012, Ms. Hornacky was forced to stop working due to medical symptoms of Postural Orthostatic Tachycardia Syndrome ("POTS"). Those symptoms included, but were not limited to, dizziness, fainting, headaches, shakiness, blurred vision, postural hyper- and hypotension, and postural tachy- and bradycardia.

11. Ms. Hornacky's last day of work was June 15, 2012. She applied for, and was granted, short term disability benefits from Hartford through December 23, 2012.

12. On or about December 29, 2012, Ms. Hornacky filed an application for long term disability income benefits with Hartford. Along with this application, her treating Cleveland Clinic neurologist, Dr. Robert Wilson, submitted a Statement of Disability, indicating that Ms. Hornacky had been diagnosed with POTS on October 3,

2012, after receiving abnormal "Tilt Table Test" results, and was completely and totally disabled, rendering her unable to work in any capacity.

13. Ms. Hornacky was granted long term disability benefits by Hartford and received long term disability benefits starting on the benefit effective date December 25, 2012.

14. As the terms of the Plan require, Ms. Hornacky also applied for Social Security disability benefits, which she was granted in April 2014. Ms. Hornacky notified Hartford of her Social Security benefit award to ensure that the Plan was reimbursed in the amount of Security Security benefits received, and her monthly long term disability benefit paid by Hartford was reduced.

15. Hartford monitored Ms. Hornacky periodically during the time she received long term disability benefits in order to ensure that Ms. Hornacky was still disabled under the terms of the Plan.

16. On or about August 14, 2014, Hartford requested that Dr. Donald C. Mann examine Ms. Hornacky and evaluate her disability status. Dr. Mann confirmed Ms. Hornacky's POTS diagnosis and opined that she was "not able to perform work on a full-time basis…[a]nd there is significant risk of fall, occurring anywhere, including workplace." Additionally, Dr. Mann noted that Ms. Hornacky's condition was not expected to improve and could possibly be progressive.

17. Satisfied that Ms. Hornacky was still totally disabled as to prevent her returning to work, Hartford continued to pay her long term disability benefits after Dr. Mann's examination.

18.     In 2017, Hartford again conducted a review of Ms. Hornacky's disability status. As part of this review, Hartford conducted video surveillance of Ms. Hornacky. They surveilled her for four days over a two-month period, and in that time, the Hartford investigator was only able to observe Ms. Hornacky leaving her house on two of the days. On one of those days, she was observed outside her residence for only three minutes. The surveillance videos showed Ms. Hornacky completing everyday tasks, such as wheeling in her garbage cans, running errands, and engaging in seated recreational activities.

19.     The video captured by Hartford accords with Ms. Hornacky's expected functional capability. As stated in Dr. Wilson's Progress Notes, Ms. Hornacky was ordered to maintain as much activity as her condition would allow. Additionally, as both Drs. Wilson and Mann acknowledged, POTS is an intermittent condition, with – as put by Dr. Wilson - a "marked spectrum of good days and bad days." All of the activities in the surveillance video were activities that were consistent with Dr. Wilson's treatment recommendations and limitations.

20.     As part of the 2017 review, Hartford retained Dr. Mann to re-examine Ms. Hornacky. During the review, Dr. Mann failed to conduct a physical examination to test for the severity of Ms. Hornacky's POTS symptoms; for instance, he did not conduct what he considers to be the "gold standard" test for POTS, the Tilt Table Test. Nor did he conduct any measurement of Ms. Hornacky's orthostatic vital signs, which also would tend to reveal the severity of Ms. Hornacky's POTS symptoms.

21. In fact, Dr. Mann was not provided and did not extract any new evidence or medical data for his 2017 review except the video surveillance footage. Nevertheless, Dr. Mann changed his opinion from 2014, concluding that Ms. Hornacky was no longer completely disabled and was capable of working 30 hours per week in a sedentary occupation, with various restrictions.

22. Moreover, as part of the 2017 review, Harford hired a vocational expert to conduct an Employability Analysis of Ms. Hornacky, since the Plan permitted termination of Ms. Hornacky's benefits in the event that she was capable of performing the duties of occupations for which the monthly median wage exceeded $2,629.61. That vocational expert opined as to several occupations for which Ms. Hornacky allegedly had the requisite qualifications and for which the national monthly median wage exceeded $2,629.61.

23. On September 27, 2017, Hartford determined that Ms. Hornacky no longer satisfied the Policy's definition of disability and terminated her long term disability benefits.

24. On March 22, 2018, pursuant to the terms of the Plan, Ms. Hornacky timely appealed Hartford's termination of her benefits. Her appeal contested Hartford's conclusions related to Dr. Mann's medical findings, as well as the conclusions of Hartford's vocational expert.

25. For instance, Ms. Hornacky hired her own vocational expert in support of her administrative appeal. Relying on the same data that formed the basis for Hartford's vocational expert's opinion, Ms. Hornacky's expert opined that her highest

earnings potential, subject to her working restrictions and in the Cleveland-Elyria metropolitan area, was $2,131.00 per month, far below than the earnings threshold to be considered "non-disabled" under the terms of the Plan.

26. In response, Hartford retained a new vocational expert, who again analyzed only national, and not Cleveland-area, wage data. The new vocational expert further ignored the work restrictions identified by Dr. Mann. Not surprisingly given its foundation in wholly inapplicable data, that vocational expert's opinion was that Ms. Hornacky's earnings potential exceeded the minimum threshold set forth in the Plan.

27. Relying on evidence with such dubious credibility as the vocational expert's report, Hartford again determined that Ms. Hornacky no longer satisfied the policy definition of disability beyond September 27, 2017 and was not entitled to long term disability benefits under the terms of the Policy. Plaintiff was informed of Hartford's decision by letter dated May 4, 2018.

28. Plaintiff has now exhausted the Plan's internal claims procedure. Any and all conditions precedent to the maintenance of this action occurred or were performed or satisfied prior to the commencement of this action. Plaintiff exhausted all available administrative remedies prior to commencing this action. Any further pursuit of administrative remedies on Plaintiff's part would be futile and any remedy resulting therefrom would be inadequate.

## COUNT ONE
## ERISA SECTION 502(a)(1)(B)

29. Plaintiff incorporates paragraphs 1 through 28 of this Complaint as if fully

restated herein.

30. Plaintiff was initially determined by Hartford to be disabled, per the terms of the Plan, secondary to her diagnosis of POTS and abnormal Tilt Table Test results. She received long term disability benefits from December 25, 2012 through September 27, 2017. Her diagnosis and disability status were confirmed in 2014 by Hartford's own physician, Dr. Mann.

31. Hartford's decision to terminate Ms. Hornacky's long term disability benefits and reverse its prior determination was arbitrary and capricious, *inter alia*, in each of the following ways:

   a. Hartford offered no objective medical evidence to dispute the abnormal Tilt Table Test results that confirmed Ms. Hornacky's POTS diagnosis and totality inability to work in 2012.

   b. In denying Ms. Hornacky's continued long term disability benefits, Hartford relied on evidence that bears little or no relationship to the existence or severity of POTS.

   c. Hartford required Ms. Hornacky to apply for Social Security disability benefits and then reached a contrary conclusion to that of the Social Security Administration on her disability status, without a medically sound and objective basis, after benefitting from Ms. Hornacky's Social Security disability payments.

   d. Hartford found no occupations that Ms. Hornacky is qualified for that, in the Cleveland-Elyria metropolitan area, pay enough to render her

not disabled and meet the minimum pay threshold per month set by Hartford.

32. Hartford's arbitrary and capricious decision deprived Anita Hornacky of long term disability benefits upon which she relied and expected to receive.

33. Plaintiff is therefore entitled to relief from the Defendant in the form of: (a) an Order compelling Defendant to compensate Plaintiff the past and future benefits due to her under the Plan; (b) an Order declaring that Plaintiff is entitled to past and future long term disability benefits under the Plan; (c) in the alternative, remand to the Plan administrator; (d) reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. § 1132(g); (e) taxable costs and interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. an Order compelling the Defendant to pay Plaintiff all past and future long term disability benefits due under the Plan and declaring that Plaintiff is entitled to past and future long term disability benefits under the Plan;

B. in the alternative, an Order remanding Plaintiff's claim for benefits to the Plan administrator;

C. an Order awarding costs pursuant to 29 U.S.C. § 1132(g);

D. an Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and other applicable law;

E. such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Scott D. Perlmuter*

SCOTT D. PERLMUTER (0082856)
ALLEN C. TITTLE (0086590)
**Tittle & Perlmuter**
2012 West 25th Street, Suite 716
Cleveland, Ohio 44113
Phone: (216) 308-1522
Fax (888) 604-9299
scott@tittlelawfirm.com
tittle@tittlelawfirm.com

*Attorneys for Plaintiff*